IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| RAYMOND JAMES DAVIDS and | : | Case No. 11-10891-TPA |
| RONDA LYNN DAVIDS, | : | |
| *Debtors* | : | Chapter 13 |
| | : | |
| RAYMOND JAMES DAVIDS and | : | Adv. No. 12-1011 |
| RONDA LYNN DAVIDS, | : | |
| *Plaintiffs* | : | Related to Doc. Nos. 94, 109 |
| | : | |
| RIVERVIEW HOMES, INC., | : | |
| et. al., | : | |
| *Defendants* | : | |

*Appearances:*    Walter E. Deacon, III, Esq., for the Plaintiff*s*
Susan Fuhrer Reiter, Esq., for Defendant Gold Coast Construction Loans
David A. Young, Esq., for Defendant Riverview Homes, Inc.

**MEMORANDUM OPINION**

Before the Court for consideration is a **Motion to Dismiss Second Amended Complaint for Failure to State a Claim Upon Which Relief Can be Granted** ("Motion") filed by Riverview Homes, Inc. at Doc. No. 109.[1] For the reasons stated herein, the *Motion* will be granted.

---

[1]    The Court's jurisdiction under *28 U.S.C. §1334* is not in dispute. Both the Plaintiff and Defendant Riverview Homes, Inc. agree that this is not a core matter as defined in *28 U.S.C. §157(b)* but both consent to the Court's entry of a final order on judgment. *See Second Amended Complaint* at ¶8; *Motion* at ¶4. This express consent eliminates any need for consideration of any issues that might otherwise be raised by the decision in *Stern v. Marshall*, 131 S.Ct. 2594 (2011). *See In re River Entm't. Co.*, 467 B.R. 808 (Bankr. W.D. Pa. 2012). This *Memorandum Opinion* constitutes the Court's findings of fact and conclusions of law.

*PROCEDURAL HISTORY*

This case is somewhat complex in that involves multiple defendants, multiple counts, and multiple versions of a complaint.  The Debtors, a married couple, filed their initial Complaint on February 6, 2012, naming as Defendants Riverview Homes, Inc. ("Riverview"), West Penn Mortgage Company ("West Penn"), Gold Coast Construction Loans ("GC"), and Venture Settlement, Inc. ("Venture").   The Complaint related to a mobile home construction project undertaken by the Debtors in 2008 using financing services allegedly provided by the Defendants.  The mobile home has been installed on the Debtors' property and they do not have any complaints as to its quality.  However, they  claim they are still trapped in a high-interest construction loan (and are threatened with foreclosure) because they have not been able to secure the lower-interest "end-loan" financing they were promised would be available once the construction was completed.

Claims in the Complaint were set forth under 5 counts against various groupings of the Defendants for  breach of contract,  negligent misrepresentation, breach of fiduciary duty, violation of the federal *Truth in Lending Act* ("TILA"), *15 U.S.C. §1601, et. seq*., and violation of the Pennsylvania *Unfair Trade Practices and Consumer Protection Law* ("UTP"), *73 P.S. §201-1, et. seq*.  Motions to dismiss were filed by all of the Defendants.  The Debtors themselves apparently realized that the Complaint had problems because they filed a response to these motions in which they stated that they intended to withdraw the causes of action for negligent misrepresentation, breach of fiduciary duty and violation of TILA and initially asked for leave to file an amended complaint.

Prior to deciding the original motions to dismiss, the Court granted the Debtors leave to amend.  On June 5, 2012, the Debtors filed an Amended Complaint against the same four Defendants, but reducing the stated claims to the following four counts: Count I for breach of contract against Riverview and GC, Count II for violation of the UTP against Riverview and GC, Count III for breach of contract against West Penn and Venture, and Count IV for violation of the UTP against West Penn and Venture.  Riverview, GC, and Venture again responded by filing motions to dismiss.  West Penn made no response to the Amended Complaint.  As will soon become apparent,  the portion of the Riverview motion to dismiss Count I of the Amended Complaint is of particular significance for present purposes and requires some extended discussion.

The breach of contract claim in Count I of the Amended Complaint involving Riverview, while not entirely clear,  was alleged to be based on an oral contract pursuant to which Riverview had allegedly agreed to "guide" the Debtors through the mobile home construction process.  Riverview is alleged to have assured the Debtors that it had an in-house mortgage source and that end-loan financing would be available for them once construction was completed. In its motion to dismiss, Riverview countered by alleging that, in fact, the contract between it and the Debtors concerning the mobile home construction was not an oral one, but rather was memorialized in a detailed written agreement dated July 19, 2008 (hereinafter sometimes "the Agreement").  A copy of the Agreement, a signed 9-page document, was attached as an exhibit to the Riverview motion to dismiss.  Riverview argued that this Agreement, which includes an integration clause, implicated the parol evidence rule, thereby barring the introduction of any alleged contradictory oral promises made at or before the time of the written agreement.

3

The Debtors responded to the Riverview motion to dismiss by conceding that this Agreement barred their breach of contract claim against Riverview unless there were a subsequent written agreement between the Parties. Footnote 4 of the brief that the Debtors filed in opposition to the Riverview motion to dismiss states in part:

> Counsel for the Davids had not seen this document previously and were not aware of its existence. The Davids' counsel agree that if this written agreement is the only document of record between the parties, given the integration clause and the parol evidence rule, the Davids will not be able to maintain an action for breach of contract.

*Debtors' Brief*, Doc. No. 86 at 7. Debtors' Counsel orally repeated this admission at the argument on the motions to dismiss. See *Tr. of 8/6/2012 Hearing*, Doc. No. 126 at page 5 line 25 through page 6 line 9. As a result of those admissions, the Court dismissed the breach of contract claim against Riverview, without prejudice to raising it again in the event the Debtors through discovery ever identified a subsequent written agreement between the Parties. *Order* of August 6, 2012, Doc. No. 92. As to the remaining items in the Riverview motion to dismiss, and in the GC and Venture motions to dismiss, the Court ordered the Debtors to file a second amended complaint to address various pleading deficiencies identified at the hearing.

The Debtors filed their *Second Amended Complaint* on August 20, 2012. It was structured in four Counts, similar to the Amended Complaint, with the exception that this time the Count I breach of contract claim was directed solely against GC. Thus, the only remaining claim against Riverview is as to the UTP under Count II. Once again, Riverview and GC responded by seeking dismissal of the *Second Amended Complaint*, Riverview by filing the *Motion* presently

4

under consideration.[2]   West Penn and Venture did not respond at all to the *Second Amended Complaint* and their default has been noted.  The Debtors filed a *Response* to the *Motion*, and both sides have filed briefs.  Argument on the *Motion* was heard on December 11, 2012, and the matter is now ripe for decision.

### STANDARD OF REVIEW

A motion to dismiss pursuant to *Fed. R.Bankr.P 7012*, incorporating *Fed.R.Civ.P. 12(b)(6)*, tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993). A complaint must be dismissed pursuant to *Rule 12(b)(6)*  if it does not allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (rejecting the former *12(b)(6)* standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  *See also, Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," citing *Twombly*, 550 U.S. at 556).

In applying this standard, the court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. *Angelastro v. Prudential-Bache Sec., Inc*., 764 F.2d 939, 944 (3d Cir.1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. *See, Cal. Pub. Employee Ret. Sys. v. The Chubb Corp*., 394 F.3d 126, 143 (3d Cir.2004).

---

[2]        The *Motion to Dismiss Second Amended Complaint for Failure to State a Claim Upon Which Relief Can be Granted*  filed by  GC at  Doc. No. 111 will be addressed in a separate order.

Nor must the Court accept legal conclusions set forth as factual allegations. *Twombly*, 550 U.S. at

555. Indeed, as the Supreme Court reiterated in *Iqbal*, "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*.

*Iqbal*, 556 U.S. at 678.

In order to survive a motion to dismiss, a complaint does not need detailed factual

allegations, though "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief

requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements

will not do. Factual allegations must be enough to raise a right to relief above the speculative level

on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 555. Courts

are not required to credit bald assertions or legal conclusions improperly alleged in the complaint.

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir.1997). Similarly, legal

conclusions draped in the guise of factual allegations may not benefit from the presumption of

truthfulness. *In re Nice Sys., Ltd. Sec. Litig.*, 135 F.Supp.2d 551, 565 (D.N.J.2001).  In all events,

"[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*,

550 U.S. at 555.


### DISCUSSION

As previously indicated, the *Motion* only concerns Count II of the *Second Amended*

*Complaint*, which sets forth a UTP claim against Riverview and GC.  Riverview argues that Count

II must be dismissed (as against Riverview) because: (1) it is precluded by the parol evidence rule

given the existence of the Agreement between the Parties; (2) it fails to set forth a viable claim for

civil conspiracy; and, (3) it is barred by the economic loss doctrine because of the Parties' contractual relationship. The Court ultimately determines that Riverview is correct as to its first argument, and in the alternative as to its third argument as well. The Court disagrees with the premise of the second argument made by Riverview, but finds that in any event the Debtors have not made sufficient factual allegations by which Riverview could be held liable for the actions of the other Defendants. Each of these arguments will be discussed below, but as an important preliminary matter the Court must determine whether the Agreement between the Debtors and Riverview can be considered in deciding the *Motion*.

### The July 19, 2008 Agreement

The July 19, 2008 Agreement is not part of the pleadings in this case. It has not been attached as an exhibit to any of the versions of the complaint that have been filed by the Debtors. A copy was first attached as an exhibit to the Riverview motion to dismiss the Amended Complaint, and then again attached as an exhibit to the *Motion* currently under consideration. As indicated above, the Debtors have effectively admitted the authenticity of the  Agreement,  both in written submissions, and in oral statements made to the Court. Under these circumstances,  may the Court consider the Agreement in deciding the *Motion*, or to do so would it have to convert the matter into a summary judgment proceeding pursuant to *Fed.R.Civ.P. 12(d)* ?

It is clear that the prohibition against considering matters outside the pleadings in determining a *Rule 12(b)(6)* motion to dismiss is not absolute. As explained by Judge Conti of the District Court in a recent opinion:

> Generally, if "matters outside the pleadings are presented to and not
> excluded by the court" a motion to dismiss must be treated as a motion for
> summary judgment. *Fed. R. Civ. P. 12(d)*. There are exceptions to this
> general rule. First, a court is permitted to consider documents "integral to
> or explicitly relied upon in the complaint" in ruling on a motion to dismiss.
> *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d
> Cir.1997). "Plaintiffs cannot prevent a court from looking at the texts of the
> documents on which [their] claim is based by failing to attach or explicitly
> cite them." Id. Second, the court may rely on "undisputedly authentic
> documents] that a defendant attaches as an exhibit to a motion to dismiss if
> the plaintiff's claims are based on the document." *Pension Benefit Guar.
> Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993).
> Third, the court may rely on public records (if undisputed) such as criminal
> case dispositions, letter decisions of government agencies and published
> reports of administrative bodies. Id. at 1197. The rationale behind these
> exceptions is that the plaintiff is already on notice of the documents in these
> situations, and as such is not prejudiced by their consideration on a motion
> to dismiss. See *U.S. Land Res. v. Jodi Realty, LLC*, Civil Action No.
> 08–5162, 2009 WL 2488316, at *4 (D.N.J. Aug.12, 2009).

*Lewis v. Allegheny Ludlum Corp.*, 2012 WL 1328360 *2 (W.D. Pa. April 17, 2012).

The present case certainly meets the rationale for these exceptions since the Debtors

are on notice of the Agreement.   Additionally, the Agreement is undisputedly authentic and has

been attached as an exhibit to the *Motion* by Riverview, so it meets those criteria of the second

exception  noted in *Lewis*.  It is less certain whether it can be said that the Debtors' claim is based

on the Agreement since there is no breach of contract claim remaining in the *Second Amended

Complaint*, though  of course there was such a claim in the prior versions, albeit not explicitly based

on the Agreement since Debtors' Counsel was not then aware of its existence.

As noted in *Lewis*, the  genesis of the second exception is the Third Circuit decision

of *Pension Ben.  Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192 (3d Cir. 1993).  In

concluding that a court may consider a concededly authentic document upon which the complaint

is based when the defendant attaches the document to its motion to dismiss, the *Pension Benefits* court stated:

> Our decision will not undermine the rationale underlying *Rule 12(b)(6)*'s requirement that a motion to dismiss be converted to a summary judgment motion if a court considers matters outside the pleadings. The reason that a court must convert a motion to dismiss to a summary judgment motion if it considers extraneous evidence submitted by the defense is to afford the plaintiff an opportunity to respond. See [*Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 48 (2d. Cir. 1991)]. When a complaint relies on a document, however, the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished. See id.

998 F.2d at 1196-97.

Under the specific circumstances of this case, the Court finds that it may consider the Agreement in deciding the *Motion*. To do so will not run counter to the rationale as expressed in *Pension Benefits*. The Debtors have been aware of the Agreement for a significant period of time and have had ample opportunity to respond to it if they believed it was necessary to refute any evidence represented by the Agreement. They have not done so, but instead have acknowledged the authenticity of the Agreement. The fact that the current version of the initial pleading, i.e. the *Second Amended Complaint*, does not include a breach of contract claim does not require a contrary conclusion.

For instance, in *Jones v. ABN Amro Mortgage Group, Inc.*, 606 F.3d 119 (3d Cir. 2010) mortgagors brought a putative class action claim against mortgagees, alleging that payments on mortgage loans were not properly credited, and asserting claims for negligence and violations of the *Real Estate Settlement Procedures Act*. The defendants filed a motion to dismiss and attached

loan documents as exhibits. The district court considered those documents in deciding the motion and the Third Circuit found it was not error to do so because their authenticity was undisputed and the plaintiffs had referenced them in the complaint. In earlier versions of the complaint filed in the present case, the Debtors have referenced the existence of a contract they had with Riverview, and that is sufficient to allow consideration of the Agreement. Additionally in their *Response* to the *Motion*, the Debtors admitted that they entered into a "written Construction Agreement with [Riverview], dated July 19, 2008" and admitted that the copy of the Agreement attached to the *Motion* was true and correct. *See Response* at ¶13. These facts are sufficient to allow consideration of the Agreement in deciding the *Motion*.

### *Parol Evidence Rule*

Having determined that it can consider the Agreement, the Court now turns to the effect of that Agreement on the UTP claim against Riverview as set forth in Count II of the *Second Amended Complaint*. Count II seeks to hold Riverview liable under the UTP for allegedly making misrepresentations that the Debtors' end-loan financing would be preapproved, that there was an in-house source for the end-loan, and that an appraisal had been conducted on the Debtors' property. *See Second Amended Complaint* at ¶¶43, 46. Riverview contends that the Agreement is an integrated contract between the Parties, and that therefore because the misrepresentations alleged by the Debtors were made prior to the Agreement, and thus represent only allegations of fraud in the inducement of the contract, evidence of them is barred by the parol evidence rule, leaving no basis for the UTP claim.

The parol evidence rule bars evidence of previous oral or written negotiations or agreements involving the same subject matter as the written contract to vary or explain the terms of the contract. *PNC Bank, N.A. v. Bluestream Tech.*, 14 A.3d 831, 841 (Pa. Super. 2010). For the parol evidence rule to apply, there must be a writing that represents the parties' entire contract, and whether there exists such a writing is determined by assessing whether the writing appears to be a contract complete in itself, importing a complete legal obligation without any uncertainty as to the object or extent of the parties' engagement. *Price v. Elexco Land Svcs., Inc*. 2009 WL 204513 *4 (M.D. Pa. 2009).

Before examining the merits of the Riverview argument, a couple of points need to be made clear. First, it is not disputed by the Debtors that the Agreement is an integrated contract that does not include any provisions consistent with the alleged misrepresentations. *See also, e.g., HCB Contractors v. Liberty Place Hotel Assocs.*, 539 Pa. 395, 652 A.2d 1278, 1279 (1995) (existence of integration clause is a clear sign that writing expresses all of the parties negotiations, conversations and agreement made prior to its execution). Second, to the extent that there was any uncertainty based on the rather vague allegations in the *Second Amended Complaint*, the Debtors have acknowledged that all of the alleged misrepresentations by Riverview that form the basis of the UTP claim occurred <u>before</u> the Agreement was signed. *See Audio Transcript of Proceeding* dated Dec. 11, 2012, 10:36:18 to 10:36:33. The misrepresentations at issue thus fall under the rubric of fraud in the inducement and not fraud in the execution.

In light of the above, the Court must conclude that the UTP claim is barred by the parol evidence rule. An explanation of how this conclusion was reached follows.

11

Since the UTP claim is based on Pennsylvania law, the Court must apply the law as determined by the Pennsylvania Supreme Court. *See, Gruber v. Owens-Illinois Inc.*, 899 F.2d 1366, 1369 (3d Cir. 1990) (in interpreting state statutes, decisions of the state's highest court are binding on the federal courts).   In that regard, it is clear that Pennsylvania  law provides that when the parties have entered into a complete written agreement, as was admittedly done here, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract.[3]  Based on that principle, the Pennsylvania Supreme Court has held that an integrated written contract bars a  UTP claim, based on the same subject matter as the contract, which alleges misrepresentations made prior to the execution of the contract because, by preventing admission of evidence of the misrepresentations, it necessarily prevents the plaintiff from showing justifiable reliance, a required element of a UTP claim.[4]

For instance, in *Yocca v. Pittsburgh Steelers Sports, Inc*. 578 Pa. 479, 854 A.2d 425 (2004) season ticket holders who had bought "stadium builder licenses" or "SBLs" brought a class action against a football team and the stadium authority for breach of contract, negligent misrepresentation, and, under the UTP.  The UTP claim was based on alleged misrepresentations made to the plaintiffs prior to the execution of "SBL agreements," primarily in a promotional brochure they had been given.  Finding that the SBL agreements were integrated contracts, the

---

[3]     Exceptions to this rule are recognized where the writing is found to be ambiguous, and also where a party avers that a term was omitted from the contract because of fraud (fraud in the execution) or mistake.  *HCB Contractors*, 652 A.2d at 1279.  Neither exception has been advanced by the Debtors in the present case.

[4]     On the requirement of proving justifiable reliance in a UTP claim, *see, e.g. Hunt v. U.S. Tobacco*, 538 F.3d 217 (3d Cir. 2008) (noting that the Pennsylvania Supreme Court has "categorically and repeatedly" stated that a private plaintiff pursuing a UTP claim must prove justifiable reliance and it has not recognized any exceptions to that requirement).

Supreme Court affirmed the lower court's dismissal of the UTP claim on a motion to dismiss,

stating:

> To bring a private cause of action under the UTPCPL, a plaintiff must show
> that he justifiably relied on the defendant's wrongful conduct or
> representation and that he suffered harm as a result of that reliance. . ..
> Appellees' UTPCPL claims, like all of the other claims in their complaint,
> are premised on the representations made by the Steelers before the parties
> entered into the SBL Agreement, particularly, the representations made in
> the SBL Brochure. According to Appellees, they are entitled to relief
> because they justifiably relied on these representations in deciding to
> purchase their SBLs and they suffered damages as a result of that reliance.
> However, given this Commonwealth's adoption of the parol evidence rule,
> Appellees simply cannot be said to have justifiably relied on any
> representations made by the Steelers before the parties entered into the SBL
> Agreement. Indeed, by signing the SBL Agreement, which contained an
> integration clause stating that the terms of the SBL Agreement superceded
> all of the parties' previous representations and agreements, Appellees
> explicitly disclaimed reliance on any such representations. . . Accordingly,
> as any reliance on the SBL Brochure or any other representation preceding
> the SBL Agreement was not justifiable, Appellees' allegations in their
> complaint fail to establish that they are entitled to relief under the UTPCPL
> and the trial court did not err in dismissing Appellees' UTPCPL claims for
> failing to state a claim.

854 A.2d at 438-39 (citations and footnotes omitted).

The holding in *Yocca* was reaffirmed and further clarified in *Toy v. Metro. Life Ins.

Co.*, 593 Pa. 20, 928 A.2d 186 (2007), the court there finding that a plaintiff whose UTP claim sets

forth a fraud in the execution of a contract claim is not precluded as a matter of law from

establishing the element of justifiable reliance, whereas a UTP claim based on fraud in the

inducement (as in the present case) is so precluded.  *See,* 928 A.2d at 206.  For other cases in which

UTP or similar common law claims  have been dismissed based on the principle articulated in

*Yocca*, see *Nicolaides v. Bank of America Corp.*, 2012 WL 2864468 (E.D. Pa. July 12, 2012)

(discussing Pennsylvania law and concluding that a UTP claim involving a loan transaction had to

13

be dismissed on parol evidence grounds); *AAMCO Transmissions, Inc. v. Wirth*, 2011 WL 6088671 (E.D.Pa. 2011) (fraud in the inducement claim dismissed where integrated franchise agreement addressed same subject matter as alleged misrepresentations predating the agreement); *Schnell v. Bank of N.Y. Mellon*, 828 F. Supp. 2d 798 (E.D. Pa. 2011) ( plaintiffs could not have justifiably relied on representations made prior to signing of refinancing contract).

The Debtors do not have a good answer to the holdings in the case authority cited above. They claim that a 1996 amendment to the UTP which added "deceptive practices" to the definition of unfair or deceptive acts or practices somehow must change the result reached in *Yocca* and the other cases.[5] The Debtors theory seems to be that prior to 1996 a UTP violation was essentially equivalent to common law fraud, whereas now the inclusion of deceptive acts within the scope of the UTP has somehow moved UTP claims away from a fraud-based cause of action, thereby rendering prior case law inapplicable.

The Debtors' argument is creative, but it is fatally flawed. To begin with, it does not appear that the Pennsylvania Supreme Court has expressly ruled on the issue of whether justifiable reliance remains a necessary element of a plaintiff's claim under the post-1996 amendment version of the UTP catch-all provision, notwithstanding the addition of the term "deceptive" to the provision. At least the Court has not been directed to such case by the Parties and has not found

---

[5]     The 1996 amendment to which the Debtors refer affected the so-called "catch-all provision under the UTP. Prior to the amendment the catch-all provision was codified at *73 P.S. § 201-2(4)(xvii)* and it read: "Engaging in any other fraudulent conduct which creates a likelihood of confusion or of misunderstanding." The amendment moved the catch-all provision to *73 P.S. §201-2 (4)(xxi)* and added the words "or deceptive" after "fraudulent." *See P.L. 906, No. 146 §1* (Dec. 4, 1996). The Court notes that the *Second Amended Complaint* just pleads a violation of the UTP, generally, without attempting to specify which exact prong(s) of the definition the Defendants' conduct allegedly fell under. Based on Debtors' Counsel's comments at the argument on the *Motion*, the Court assumes the Debtors are proceeding under the catch-all provision.

such case in its own research. However, the Third Circuit has in effect predicted that the Pennsylvania Supreme Court would recognize that justifiable reliance remains an essential element despite the 1996 amendment. *See*, *Hunt v. U.S. Tobacco, supra*, 538 F.3d at 236 (the Pennsylvania Supreme court has announced and applied a broad rule that private plaintiffs must allege justifiable reliance under the UTP; it would be imprudent to create an exception for plaintiffs suing under the "deception" prong of the UTP catch-all provision). *See also*, *Lewis v. Ford Motor Co.*, 263 F.R.D. 252, 261 (W.D. Pa. 2009) (noting an "almost universal agreement by the district courts of this circuit following ... *Hunt*" that a plaintiff must allege and show justifiable reliance for claims under the catch-all provision). Thus, since justifiable reliance remains an essential element of a catch-all provision claim, the rationale of *Yocca* and the cases following it remains in full force.

The Debtors cite to *Bennett v. A.T. Masterpiece at Broadcasting, LLP*, 40 A.3d 145 (Pa. Super. 2012) as showing that the Pennsylvania intermediate appellate courts now recognize that the 1996 amendment has removed the requirement of proving all of the elements of common law fraud in a UTP catch-all action. This court certainly agrees that the Pennsylvania intermediate courts have at least been trending toward finding that the 1996 amendment has lessened the degree of proof required under the catch-all provision. *See, e.g.*, most recently, *Fazio v. Guardian Life Ins. Co. of Am.*, –A.3d–, 2012 WL 6177271 (Pa. Super. Dec. 12, 2012). However, that fact does not help the Debtors here for two reasons.

First, common law fraud claims have a number of required elements in addition to justifiable reliance. Thus, finding that a post-1996 amendment UTP claimant does not have to prove common law fraud under the catch-all provision is not the same as finding that justifiable reliance need not be shown. *See Hunt,* 538 F.3d at 225 (even accepting for the sake of argument that the

1996 amendment means a claimant need not prove all elements of common law fraud, it does not necessarily follow that justifiable reliance is one of the common law fraud elements from which a plaintiff alleging deception is excused).   Second, the Court has not been directed to any Pennsylvania intermediate court case specifically holding that justifiable reliance is no longer required under the catch-all provision.  Even if there were such a case, this Court would nevertheless be bound to follow the Third Circuit and its own District Court precedents until they were changed or until the Pennsylvania Supreme Court ruled otherwise.  *See, e.g., DeFebo v. Andersen Windows, Inc.*, 654 F. Supp. 2d 285, 294  (E.D. Pa. 2009) (Third Circuit's prediction of how Pennsylvania's highest court would rule is binding on lower federal courts in the Circuit).

For all of the reasons stated above, the Court finds that Count II of the *Second Amended Complaint* must be dismissed because the parol evidence rule will prevent the Debtors from proving justifiable reliance on the alleged misrepresentations made by Riverview prior to the formation of the Agreement.  Although the Court could end its opinion here, for the sake of completeness it will proceed to consider the remaining two arguments for dismissal raised by Riverview.

### *Economic Loss Doctrine*

Riverview also argues that Count II must be dismissed on the basis of the "economic loss doctrine."  Under that doctrine, plaintiffs are prohibited from recovering in tort, those economic losses to which their entitlement flows only from a contract.  *Tennis v. Ford Motor Co.*, 730 F.Supp. 2d 437, 449 (W.D. Pa. 2010). Riverview relies primarily on *Werwinski v. Ford Motor Co.*, 286 F.3d

16

661 (3d Cr. 2002), a putative class action against an automobile manufacturer relating to allegedly defective transmission components.

The plaintiffs in *Werwinski* asserted claims of fraudulent concealment and violation of the UTP and argued on appeal that the district court had erred in applying the economic loss doctrine to their claims because it only applied to transactions between commercial entities and because it did not bar actions for intentional fraud/UTP. The Third Circuit noted that the Pennsylvania Supreme Court had not addressed either of those issues and it would therefore, have to predict how that court would rule. Since only the fraud/UTP related issue is involved in the present case, from this point the Court will focus on that aspect of the *Werwinski* decision.

Looking first to the intentional fraud claim, the *Werwinski* court reviewed various court opinions applying Pennsylvania law and found that they were unsettled and shed little light on whether there existed an exception to the economic loss doctrine for fraud actions. It then turned to a review of cases from other courts applying the law of states other than Pennsylvania. Following that extensive review, the court concluded that

> "[i]n the absence of any pertinent case law on the subject, the district court aptly predicted that the Supreme Court of Pennsylvania would apply the economic loss doctrine to intentional fraud cases by drawing an analogy from Pennsylvania acceptance of the 'gist of the action' doctrine."

286 F.3d at 680. The court went on to note that this conclusion was congruent with its past recognition that Pennsylvania state courts have exhibited a lack of hospitality to tort liability for purely economic loss. *Id.*

17

The *Werwinski* court next turned to the question of the economic loss doctrine and the UTP, which it labeled as a "statutory fraud claim."   It found "persuasive authority treating common law and statutory fraud claims similarly under the economic loss doctrine" and further that the same policy justifications for applying the doctrine to common law intentional fraud claims support applying the doctrine to UTP claims as well.  286 F.3d at 681.  The court thus affirmed the district court's order finding against the plaintiffs on economic loss doctrine grounds.

As was discussed above with regard to the parol evidence rule issue, this Court is bound to follow Third Circuit precedent predicting how the Pennsylvania Supreme Court would rule on an issue of Pennsylvania law until that court actually rules on the issue, or until the Third Circuit overrules its prior decision.  Neither of those events has happened here.  Instead, the Debtors argue that *Werwinski* should be limited or distinguished, based once again on the reputed effect of the 1996 amendment to the UTP and case law thereunder, which the Debtors contend now recognizes a differentiation between UTP and common law fraud cases, thus undercutting the rationale of *Werwinski*.

The Debtors raise a non-frivolous argument here and the Court  is certainly aware that *Werwinski* has been the subject of some criticism and narrowly construed by some courts to avoid its holding regarding the UTP.[6]  Nevertheless, on balance, the Court finds that the proper approach in these circumstances is to follow the holding in that case.

---

[6]      For instance, in *Star v. Rosenthal*, – F.Supp. 2d –. 2012 WL 3235421 (E.D. Pa. 2012) the court did not follow *Werwinski*, finding that it did not apply to transactions in real property.

*Werwinski* was decided in 2002, six years after the supposedly transformational 1996 amendment was passed, so it is difficult to say that the decision was rendered without the benefit and awareness of that amendment, by the court or the parties to the case.  Moreover, as the discussion above concerning the parol evidence rule demonstrated, even if it is accepted that the 1996 amendment differentiated UTP catch-all deception claims from common law fraud claims for some purposes, that does not necessarily mean for all purposes.  Just as the justifiable reliance requirement survived the amendment, so too it is possible that the economic loss doctrine defense did as well.  Finally, the Court does not discern any overwhelming recent case law trend rejecting *Werwinski* or strictly limiting it to its facts.  For instance, in a thoughtful opinion from last year, the court in *Wulf v. Bank of America, N.A.* 798 F.Supp. 2d 586 (E.D. Pa. 2011) rejected the same argument the Debtors are making here and applied *Werwinski* in dismissing a UTP claim in a case alleging that a mortgage lender had made misrepresentations concerning flood insurance.  798 F. Supp. 2d at 595-97.  *See also, Sarsfield v. Citimortgage, Inc.*, 707 F. Supp. 2d 546 (M.D. Pa. 2010).

Thus, because the alleged misrepresentations made by Riverview that form the basis of the Debtors' UTP claim were closely interwoven with the Agreement between the Parties, Count II of the *Second Amended Complaint* must be dismissed under the economic loss doctrine pursuant to the holding in *Werwinski*.

### *Civil Conspiracy*

The final argument raised by Riverview in support of the *Motion* is that the Debtors have previously admitted that the only way they could hold Riverview liable under the UTP  is by

alleging and proving a civil conspiracy existed between Riverview and GC concerning the alleged misrepresentations. Riverview argues that the *Second Amended Complaint* fails to meet pleading requirements for a civil conspiracy because it does not allege that Riverview and GC were motivated by malice against the Debtors and does not allege that the purpose of the conspiracy was to injure the Debtors. Riverview argues that, to the contrary, the allegation is simply that Riverview and GC were motivated to act for their own financial gain, causing any conspiracy claim to fail as a matter of law.

In response, the Debtors do not attempt to show that the *Second Amended Complaint* meets technical pleading requirements for a civil conspiracy. The Court may therefore presume that it does not. The Debtors do argue, however, that they did not ever restrict themselves by admitting that Riverview could only be held liable here based on a civil conspiracy, although that would be one way to do so. They go on to argue that they have made sufficient allegations to hold Riverview liable based on joint action with GC, even if such does not met the definition of a conspiracy.

The Court has reviewed the transcript from the argument on the motions to dismiss that were filed against the Amended Complaint, and it must agree with the Debtors that they never limited themselves to a civil conspiracy as the only way of holding Riverview liable. The subject of civil conspiracy was raised by the Court, and by Counsel for Riverview, not by the Debtors. While in response to questions Debtors' Counsel did indicate that additional facts would be pleaded in a further amended complaint to establish that joint action occurred between Riverview and GC, Counsel never stated such action could only be established by showing the existence of a conspiracy.

The Court would thus decline to dismiss Count II on the basis of the specific argument raised by Riverview.  The Court can envision other theories of joint or imputed liability (aside from conspiracy) that *might* impose liability on Riverview for misrepresentations made by GC (*e.g.*, agency, joint venture, concerted action).  Having said that, however, the Court does not believe the *Second Amended Complaint* has pled sufficient  facts to establish any such alternative theory.  The relevant allegations only include some organizational overlap in ownership among the entities (*Second Amended Complaint* at ¶¶ 2-6), a vague allegation that Riverview and GC had both made misrepresentations to the Debtors (*id.* at ¶¶43, 46), and another vague allegation that the two Defendants created a likelihood of confusion or misunderstanding (*id.* at ¶ 49).

The Court thus finds the allegations in the *Second Amended Complaint* to be woefully lacking in facts that would support any joint or imputed liability involving Riverview for the actions of GC.

An appropriate order follows.

Dated: December 18, 2012

Thomas P. Agresti, Chief Judge
United States Bankruptcy Court

Case Administrator to serve:
    Jeffery Herman, Esq.
    Walter "Stormy" Deacon, III, Esq.
    Susan Reiter, Esq.
    Erin Dyer, Esq.
    David Young, Esq.
    Ronda Winnecour, Esq.
    Debtors
    Office of the United States Trustee

    West Penn Mortgage Co.
    2402 Route 66,
    Delmont, Pa. 15626

    Venture Settlement, Inc
    c/o Kelly Hayden
    515 Southfield Drive
    Greensburg, Pa. 15601